**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ENTERTAINMENT ONE UK LTD., | CASE NO.: 1:21-CV-00386 |
| PLAINTIFF, | |
| V. | JUDGE VIRGINIA M. KENDALL |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | MAGISTRATE JUDGE JEFFREY COLE |
| DEFENDANTS. | **FILED UNDER SEAL** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR ENTRY
OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff, Entertainment One UK Ltd. ("eOne" or "Plaintiff"), submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, a temporary asset restraint, and expedited discovery.

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................ 1

II.    STATEMENT OF FACTS ................................................................ 2

   A.  Plaintiff's Trademarks and Products ................................................. 2

   B.  Defendants' Unlawful Activities .................................................... 2

       i.  Defendants Operate Similar Legitimate-Looking Internet Stores. ............................ 3

      ii.  Defendants Employ Various Tactics to Conceal Their Identities. ............................ 3

III.    ARGUMENT .............................................................................. 4

   A.  Standard for Temporary Restraining Order and Preliminary Injunction ................ 5

   B.  Plaintiff Will Likely Succeed on the Merits ......................................... 6

       i.  Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim ........ 6

      ii.  Plaintiff Will Likely Succeed on Its False Designation of Origin Claim and Illinois Uniform Deceptive Trade Practices Act Claim ................................................ 8

     iii.  Plaintiff Will Likely Succeed on Its Copyright Infringement Claim . ...................... 9

   C.  There Is No Adequate Remedy At Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief ................................................ 9

   D.  The Balancing of Harms Tips in Plaintiff's Favor ................................... 11

IV.   THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ..................................... 12

   A.  Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Trademarks Is Appropriate .......................... 12

   B.  Preventing the Fraudulent Transfer of Assets Is Appropriate ....................... 13

   C.  Plaintiff Is Entitled to Expedited Discovery ...................................... 14

V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ..................................... 15

VI.   CONCLUSION ............................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Abbott Labs.v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992).............................................. 6

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) ........................................................................................................................................... 9

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007)................................. 13

*AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008) ...................................................................... 7

*Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ................................................. 12

*CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001)..................................................... 8

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) ............................................................................................................................ 6

*Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015)... 5

*Chrome Hearts LLC v. P'ships & Unincorporated Assns. Identified on Schedule "A"*, 2015 U.S. Dist. LEXIS 120232 (N.D. Ill. Sept. 9, 2015). .................................................................................................. 5

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996).................................. 5

*Decks Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) .......... 15

*Eli Lilly & Co. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000) ................................................ 10

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)............................................................................ 14

*Grupo Mexicano, de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)........................... 14

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977)......... 10

*Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979) ..................................... 10

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988) ................. 10

*JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007).................................................. 9

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999) ................... 9

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994) .................................... 11

*Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005)....... 14

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms.Indus. Ass'n.*, 929 F. Supp. 473 (D.D.C. 1996) .... 12

*MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ............................... 11

*Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007) ......................................................... 8

*Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005)................................. 7

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978) ....................................... 14

*Polyblank Designs Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 18-cv- 5846 (N.D. Ill. Aug. 30, 2018) .......................................................................... 13

*Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002)..................................... 10

*Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989) .......................................................... 15

*Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001)............................................................. 10

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) ................................. 8

*Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) ........................................... 9

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) ................................. 6, 11

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) ..................... 14

*Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011) ..................... 11

*Wham-O Holding, Ltd. and InterSport Corp. d/b/a WHAM-O v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 18-cv-05878 (N.D. Ill. Sep. 18, 2018) ........................ 13

## STATUTES

15 U.S.C. § 1051, et seq. ................................................................................. 5

15 U.S.C. § 1065 ........................................................................................ 2, 7

15 U.S.C. § 1114(1) ..................................................................................... 7

15 U.S.C. § 1116(a) ..................................................................................... 12

15 U.S.C. § 1117(a)(1) .................................................................................. 13

15 U.S.C. § 1125(a) ................................................................................... 7, 9

15 U.S.C. § 1125(c)(1) .................................................................................. 2

17 U.S.C. § 101 ......................................................................................... 9

17 U.S.C. § 501 ......................................................................................... 9

28 U.S.C. § 1331 ........................................................................................ 5

28 U.S.C. § 1391 ........................................................................................ 5

28 U.S.C. §§ 1338(a)-(b) ................................................................................ 5

Fed. R. Civ. P. 26(b)(2) ............................................................................... 14

Fed. R. Civ. P. 65(b) ................................................................................... 5

Fed. R. Civ. P. 65(c) ................................................................................... 15

**MEMORANDUM OF LAW**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, false designation of origin, violation of the Illinois Uniform Deceptive Trade Practices Act (UDTPA), and copyright infringement, against the defendants identified on Schedule A to the Complaint (the "Defendants"). As alleged in the Complaint, Defendants operate fully interactive, ecommerce Internet stores under the online marketplace accounts listed in Schedule A (the "Seller Aliases" or "Defendant Internet Stores"), using infringing and counterfeit versions of eOne's federally registered trademarks and copyrights ("PJ Masks Trademarks" and "PJ Masks Copyrights"; collectively, "eOne Intellectual Property (IP)") by offering for sale and/or selling unauthorized, unlicensed, and counterfeit products (the "Counterfeit PJ Masks Products" or "Counterfeit Products").

Defendants conduct a sophisticated counterfeiting operation targeting Illinois residents by operating ecommerce stores using one or more Seller Aliases through which Illinois residents can purchase Counterfeit PJ Masks Products. A logical relationship exists between the Defendant Internet Stores, established by uniquely shared identifiers, such as design elements and similarities of the counterfeit products offered for sale, suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

Plaintiff is forced to file this action to combat Defendants' counterfeiting of its eOne IP, as well as to protect unknowing consumers from purchasing Counterfeit PJ Masks Products, and therefore respectfully requests that this Court issue an *ex parte* Temporary Restraining Order ("TRO"), which would: (1) temporarily restrain Defendants' continued manufacture, distribution, offering for sale, and sale of Counterfeit PJ Masks Products; (2) temporarily restrain Defendants' assets to preserve Plaintiff's right to an equitable accounting; and, (3) authorize expedited

1

discovery allowing Plaintiff to inspect Defendants' records relating to the Counterfeit PJ Masks Products and Defendants' financial accounts.

## I.    STATEMENT OF FACTS

### A.  Plaintiff's Trademarks and Products

Founded in 1994, Plaintiff, Entertainment One UK Ltd., acts as the creator, marketing branch, and distributor of all authorized products utilizing the PJ Masks Trademarks (referred to as "PJ Masks Products" or "eOne Products") internationally. *See* Declaration of Paul Varley ("Varley Decl.") at ¶¶ 3. eOne is the official licensor of PJ Masks Products and provides its Intellectual Property assets to its authorized licensees for the development, production, distribution, and sale of authorized licensed products. *Id.* at ¶ 6.

eOne is the owner of the federally registered PJ Masks Trademarks and PJ Masks Copyrights. *Id.* at ¶ 7. The PJ Masks Trademarks: are inherently distinctive; identify products as merchandise originating from eOne; have been used exclusively and continuously; have never been abandoned; are valid, subsisting, and in full force and effect; are incontestable pursuant to 15 U.S.C. § 1065; and, qualify as famous marks under 15 U.S.C. § 1125(c)(1). *Id.* at ¶¶ 8-10. eOne has expended substantial time and resources developing and promoting the PJ Masks Trademarks and Copyrights. *Id* at 11. As a result, the eOne IP is widely recognized, and exclusively associated by consumers and the public as being products sourced from Plaintiff. *Id.* eOne has ensured that products bearing its IP are manufactured to the highest quality standards. *Id.* As such, the recognition and goodwill associated with the brand is of incalculable and inestimable value to eOne. *Id.*

### B.  Defendants' Unlawful Activities

Significant counterfeiting has stemmed from the success of the PJ Masks brand. *Id* at ¶ 12.

As a result, eOne implemented an anti-counterfeiting program that investigates suspicious ecommerce activity and online marketplace listings identified through proactive Internet sweeps. *Id*. eOne encountered numerous Defendant Internet Stores offering for sale, selling, and importing Counterfeit PJ Masks Products in connection with eOne IP. *Id*. Defendants are not authorized by eOne to use eOne IP. *Id*. Furthermore, Defendants operate legitimate-looking Internet stores which bear remarkable similarities, and utilize nearly-identical evasion techniques to conceal their identities and avoid enforcement efforts—utilizing online chat platforms and groups, and monitoring trademark infringement litigation alert websites—which all together establish a logical and interrelated relationship among the Defendants. *Id.* at ¶ 17.

     i. <u>Defendants Operate Similar Legitimate-Looking Internet Stores.</u>

The online marketplace accounts and product listings of Defendants are designed to facilitate counterfeit sales by giving the impression to consumers that they are authorized retailers featuring genuine PJ Masks Products. *Id*. at ¶ 14. Defendant Internet Stores look sophisticated and give the impression of authenticity, by: (1) accepting payment in U.S. dollars, through third-party payment processors, including Amazon, PayPal, and Western Union; (2) incorporating trustworthy features, such as "live 24/7" customer service; (3) implementing security solutions consumers associate with authorized retailers, displaying the logos of McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal®; and, (4) including authentic images and design elements. *Id*. Other notable common features include the: Counterfeit PJ Masks Products offered; images of product listings; stores' layout and appearance; listing descriptions; naming conventions for store names, listing names, and product titles; metadata; domain redirection and domain name registrations; ecommerce platforms; shipping, payment, and check-out methods; anonymity; name servers; general absence of identifying or contact information; and similarly priced goods. *Id* at 17.

ii. Defendants Employ Various Tactics to Conceal Their Identities.

Defendants utilize evasive tactics to conceal their identities, including, among other things: 1) using multiple aliases and addresses to register online marketplace accounts in order to avoid detection, while operating a massive network of Internet Stores dealing in counterfeit products; 2) using privacy services that conceal their identities and contact information; 3) registering new domain names/online marketplace accounts under different aliases, abandoning accounts named in lawsuits; 4) transferring hosting of their websites to rogue servers, located outside the U.S., removing themselves from the reach of the Court, frustrating enforcement efforts of IP rights-holders; and 5) retaining anonymity by shipping counterfeit products in small quantities via international mail without a return address and/or using false information, thereby minimizing detection by U.S. Customs and Border Protection. *Id* at ¶¶ 15-17.

Furthermore, counterfeiters such as Defendants, frequently operate multiple credit card merchant accounts, as well as Amazon and PayPal accounts, hiding behind layers of payment gateways, thereby allowing them to persist in their illegal operation without detection, and despite Plaintiff's best enforcement efforts. *Id* at ¶ 19. Upon information and belief, Defendants regularly move funds obtained by their infringement of Plaintiff's IP, from the accounts associated with their online marketplaces – which are held by third-party payment processors – to offshore bank accounts, which fall outside the jurisdiction of this Court. *Id.*

Plaintiff does not yet know the full extent and identity of the channels through which Defendants source and sell the Counterfeit Products. *Id.* at ¶ 20. Defendants directed, supervised, and/or controlled activity infringing on Plaintiff's IP and the sale of Counterfeit Products. *Id.* Defendants have a direct financial interest in the infringing activity and realize profits from the sale of Counterfeit Products. *Id.* In addition to directly organizing and effectuating such infringing activities, each Defendant also induced, caused, and materially

contributed to infringing conduct by others, including the other Defendants. *Id.* There is a causal relationship between the infringing activity and the financial benefit reaped by Defendants. *Id.*

## II.   ARGUMENT

Defendants' purposeful and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill associated with the eOne IP. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO, where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition. Fed. R. Civ. P. 65(b). Entry of a TRO is appropriate as it would prevent ongoing injury to Plaintiff stemming from Defendants' wrongful use of the eOne IP and preserve the status quo until such time as a hearing can be held.

In the absence of an *ex parte* TRO, Defendants likely will register new online marketplace accounts under new aliases, modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based bank accounts to offshore bank accounts, outside the jurisdiction of this Court. Varley Decl. at ¶ 19. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over these claims pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331; and, has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391. This Court may also properly exercise personal jurisdiction over Defendants since they directly target business activities toward

consumers in this Judicial District by operating Internet Stores, which directly offer for sale, and provide a platform through which Illinois residents can purchase, Counterfeit PJ Masks Products. *See* Complaint at ¶¶ 7, 18, and 19. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each Defendant is committing tortious acts, engaging in interstate commerce, and has wrongfully caused eOne substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and, (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these conditions have been met, it must consider the harm the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when deciding whether to grant the injunction. *Id.* This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*.

### B. Plaintiff Will Likely Succeed on the Merits

i. Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods…which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). As such, a Lanham Act trademark infringement claim has three elements: (1) its mark is distinctive enough to be worthy of protection; (2) defendants are not authorized to use the trademark; and (3) a likelihood of confusion exists as to the origin or sponsorship of defendants' products. . *See* 15 U.S.C. § 1125(a); *Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted).

eOne's PJ Masks Trademark registrations are: inherently distinctive; registered with the United States Patent and Trademark Office on the Principal Register; continuously used; never abandoned; valid, subsisting, and in full force and effect; and, often incontestable pursuant to 15 U.S.C. § 1065. Varley Decl. at ¶¶ 7-10. As such, the registrations constitute prima facie evidence of their validity and of eOne's exclusive right to use the marks pursuant to 15 U.S.C. § 1057(b). Furthermore, eOne has not authorized Defendants to use any of the PJ Masks Trademarks, nor have they authorized them as licensors or resellers of PJ Masks brand products. *Id.* at ¶ 14. Thus, Plaintiff satisfies the first and second elements of its Lanham Act claim.

Plaintiff satisfies the third element of its Lanham Act claim in two ways: under the Seventh Circuit's seven-factor likelihood of confusion test; and/or through the presumption of confusion inherent in the manufacture and distribution of counterfeit products. The Seventh Circuit's seven enumerated factors include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be

exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

All seven factors weigh heavily in eOne's favor. First, Defendants use of Plaintiff's trademarks is identical in appearance, and done so in a manner, which suggests to the consumer, that the source or origin of the Counterfeit PJ Masks Products is eOne. Second, Defendants' Counterfeit PJ Masks Products are intentionally designed to look identical or similar to genuine PJ Masks Products. Varley Decl. at ¶¶ 13-14. Third, both Plaintiff and Defendants advertise and sell their products via the Internet in the same area and identical manner. Fourth, potential consumers purchasing PJ Masks Products are diverse, with varying degrees of sophistication, likely to have difficulty distinguishing genuine PJ Masks Products from Counterfeit PJ Masks Products. Fifth, the PJ Masks Trademarks have become famous, distinctive, and internationally recognizable; they signify to consumers that the PJ Masks Products come from Plaintiff and are manufactured to the highest quality standards. Finally, evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine PJ Masks Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "plaintiff need not show actual confusion in order to establish likelihood of confusion.").

While the seven-factor likelihood of confusion test has been proven in Plaintiff's favor, Plaintiff can further establish that a likelihood of confusion exists through an additional independently sufficient basis – the presumption of confusion inherent in Defendants'

counterfeiting operation. The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, here, the Court can presume a likelihood of confusion from Defendants' use of the PJ Masks Trademarks.

ii. <u>Plaintiff Will Likely Succeed on Its False Designation of Origin Claim and Illinois Uniform Deceptive Trade Practices Act Claim.</u>

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show: (1) plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)), which is similar to the Lanham Act test. Furthermore, in Illinois, courts resolve unfair competition and deceptive trade practices claims, "according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Since Plaintiff has established a likelihood of success on the merits for its trademark infringement claim against Defendants (*see supra*), a likelihood of success on the merits for Plaintiff's false designation of origin and IUDTP claims are also established.

iii. <u>Plaintiff Will Likely Succeed on Its Copyright Infringement Claim.</u>

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to "derivative works," or "work[s] based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization . . ., or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Here, Plaintiff is the owner of the PJ Masks Copyrights. Varley Decl. at ¶ 7. The Counterfeit PJ Masks Products are identical, feature components of, and/or are derived from the creative content found in the protected PJ Masks Copyrights. As such, the infringement is clear on its face and establishes that Plaintiffs are likely to succeed on the merits.

### C. There Is No Adequate Remedy At Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the PJ Masks Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Varley Decl. at ¶¶ 20-24. The extent of such harm, and the possible diversion of customers due to loss in brand confidence, are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no

adequate remedy at law). Furthermore, Defendants' intentional copyright infringements deprive Plaintiff of the ability to control the creative content protected by the copyrights; devalues the eOne brand by associating it with inferior quality goods; and, undermines the value of the copyrights by creating the impression that infringement may be undertaken with impunity thereby threatening Plaintiff's ability to develop further licensees and maintain existing licensee relationships. *Id*. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("In sum, Plaintiffs have offered two independently sufficient grounds for a finding of irreparable harm. Plaintiffs will suffer irreparable harm because of [Defendant's] likely inability to pay for the past and/or future infringements that it has induced. Additionally, [Defendant's] inducement has and will continue to irreparably harm Plaintiff's ability to enforce its exclusive rights."); *Warner Bros. Entm't, Inc. v. WTV Sys.,* 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011) (recognizing that the perception of the ability to infringe copyright protected work undermines the ability to develop and conduct business).

Accordingly, Plaintiff has satisfied the Seventh Court's standard for granting preliminary relief by establishing that there is no adequate remedy at law and that Plaintiff will continue to suffer irreparable harm in the absence of such relief.

**D.  The Balancing of Harms Tips in Plaintiff's Favor**

Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted. The Court must next consider the potential harm that Defendants could suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts

generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balancing of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms.Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996).

Defendants are knowingly using eOne's protected eOne IP, in order to profit from sales of Counterfeit eOne Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires Defendants be ordered to cease their unlawful conduct.

## III.  THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. The facts in this case warrant such relief.

### A.  Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Trademarks Is Appropriate

Plaintiff requests a temporary injunction requiring Defendants to immediately cease all use of the PJ Masks  Trademarks and Copyrights, and/or substantially similar marks, on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the eOne Intellectual Property and associated goodwill, as well as the ongoing harm to

consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the eOne IP. The need for *ex parte* relief is magnified in today's global economy, where counterfeiters can easily and anonymously operate over the Internet. Plaintiff is currently unaware of the true identities and locations of Defendants, as well as other ecommerce Internet Stores used to distribute infringing and Counterfeit eOne Products. Many courts have authorized immediate injunctive relief in similar cases involving unauthorized use of trademarks and counterfeiting. *See, e.g. Wham-O Holding, Ltd. and InterSport Corp. d/b/a WHAM-O v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 18-cv-05878 (N.D. Ill. Sep. 18, 2018) and *Polyblank Designs Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 18-cv-5846 (N.D. Ill. Aug. 30, 2018).

**B.  Preventing the Fraudulent Transfer of Assets Is Appropriate**

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit eOne Products is not impaired.[1] Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim; therefore, Plaintiff is entitled, "subject to

---

[1] Plaintiff, Entertainment One UK Ltd., has concurrently filed a Motion for Leave to File Under Seal certain documents for this same reason.

the principles of equity, to recover ... defendant's profits." 15 U.S.C. § 1117(a)(1). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought.

The Northern District of Illinois, in *Lorillard Tobacco Co. v. Montrose Wholesale Candies,* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano, de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). As the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint preventing the fraudulent transfer of assets is appropriate and proper.

### C. Plaintiff Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Additionally, under Federal Rule of Civil Procedure 65(d)(2)(C),

this Court has the power to order any third-party, in active concert with the Defendants, to provide expedited discovery in an action once notice of the order is given. Fed. R. Civ. P. 65(d)(2)(C).

Plaintiff respectfully requests expedited discovery, specifically of third-party payment processors, to discover the bank and payment system accounts Defendants use for their counterfeit operations. The request in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Without this information, an asset restraint would have little value as Plaintiff would not know the entities upon whom to serve the Order. Discovery of these accounts, so they can be frozen, is necessary to ensure Defendants' activities are contained. *See, e.g., Decks Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Accordingly, Plaintiff respectfully requests expedited discovery be granted.

## IV.  A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). See, e.g., *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015).

## V.  CONCLUSION

Defendants' counterfeiting operations are significantly injuring and irreparably harming eOne's business, its eOne brand, consumers, and the general public. Without entry of the requested relief, Defendants' infringement and deceptive use of Plaintiff's eOne Intellectual Property will continue to lead prospective consumers and the public to believe that Defendants' Counterfeit eOne Products have been manufactured by or emanate from eOne, when in fact, they have not. In

view of the foregoing, and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith, and set a status hearing before its expiration, at which hearing Plaintiff intends to present a motion for preliminary injunction.

DATED: January 25, 2021

Respectfully submitted,

*/s/ Ann Marie Sullivan*
Ann Marie Sullivan
Alison Carter

AM Sullivan Law, LLC
1440 W. Taylor St., Suite 515
Chicago, Illinois 60607
Telephone: 224-258-9378
E-mail:  ams@amsullivanlaw.com

***ATTORNEYS FOR PLAINTIFF***