UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENTERTAINMENT ONE UK LTD., <br><br> PLAINTIFF, <br><br> V. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> DEFENDANTS. | CASE NO.: 1:21-CV-00386 <br><br> JUDGE VIRGINIA M. KENDALL <br><br> MAGISTRATE JUDGE JEFFREY COLE <br><br> **FILED UNDER SEAL** |

## DECLARATION OF PAUL VARLEY

I, Paul Varley, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am a consultant for Entertainment One UK Ltd. ("eOne"), which is based in United Kingdom. I am knowledgeable about or have access to business records concerning all aspects of the brand protection operation of Entertainment One UK Ltd. including, but not limited to, its trademarks, copyrights, other intellectual property, sales, online sales, advertising, marketing, media coverage, and associated international operations. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Entertainment One UK Ltd. is an entertainment production and distribution company.

4. PJ Masks is an animated children's television series based on the Les Pyjamasques

1

book by Romuald Racioppo.

5. eOne Products have found incredible success and appreciation worldwide.

6. eOne is the official licensor of all eOne Products and provides its Intellectual Property assets to its authorized licensees for the development, production, distribution, and sale of authorized licensed products.

7. Entertainment One UK Ltd. is the owner of the trademark and copyright registrations for the PJ Masks Trademarks and Copyrights (collectively, the "eOne Intellectual Property (IP)"), which are covered by U.S. Trademark Registration Nos. 4,986,001 and 4,815,385 (collectively, the "PJ Masks Trademarks"); and numerous U.S. Copyright Registrations: PA0002021147; PA0002014749; PA0002013476; PA0002014748; PA0002014750; PA0002014754; PA0002014752; PA0002014753; PA0002014704; PA0002014711; PA0002014713; PA0002014717; PA0002014719; PA0002014732; PA0002014559; PA0002014739; PA0002014745; PA0002014742; PA0002014744; PA0002014721; PA0002014721; VA0002012133; VA0002022908; VA0002012134; VA0002012135; VA0002012131; VA0002012138; VA0002012136; and VA0002012137 (collectively, the "PJ Masks Copyrights").

8. The above registrations for eOne are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates and copyright registrations for the above PJ Masks Trademarks and PJ Masks Copyrights are attached hereto as **Exhibit 1** and **Exhibit 2**, respectively.

9. The PJ Masks Trademarks and Copyrights have been continuously used and never abandoned.

10. The PJ Masks Trademarks and Copyrights are distinctive and identifies the

merchandise as goods from eOne.

11. eOne has expended time, money, and other resources in developing, advertising, and otherwise promoting the PJ Masks Trademarks and Copyrighted Works. As a result, products bearing the PJ Masks Trademarks and Copyrights are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from eOne. eOne has ensured that products bearing its IP are manufactured to the highest quality standards. As such, the recognition and goodwill associated with the brand is of incalculable and inestimable value to eOne.

12. The success of the eOne brand has resulted in its significant counterfeiting. Consequently, eOne is implementing an anti-counterfeiting program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Entertainment One UK Ltd. has identified numerous domain names linked to fully interactive websites and marketplace listings on various platforms, including the Internet stores operating under the Defendant domain names and/or the online marketplace accounts identified in Schedule A which is attached to the Complaint (collectively, the "Defendant Internet Stores"), which are offering for sale, selling, and importing counterfeit products in connection with the PJ Masks Trademarks and Copyrights (the "Counterfeit eOne Products") to consumers in this Judicial District and throughout the United States. Despite eOne's enforcement efforts online, Defendants have persisted in creating the Defendant Internet Stores.

13. I perform, supervise, and/or direct investigations related to Internet-based infringement of the PJ Masks Trademarks and Copyrights. Our investigation shows that Defendants are using the Defendant Internet Stores to sell Counterfeit eOne Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the Defendant Internet Stores and determined that Counterfeit eOne

Products were being offered for sale to the United States, including Illinois. This conclusion was reached through visual inspection of the products listed for sale, the price at which the Counterfeit eOne Products were offered for sale, other features commonly associated with websites selling counterfeit products, because Defendants offered shipping to the United States, including Illinois, and because Defendants and their websites do not conduct business with eOne and do not have the right or authority to use the PJ Masks Trademarks and Copyrights for any reason. True and correct copies of screenshot printouts showing the active Defendant Internet Stores reviewed are attached as **Exhibit 3.**

14. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers selling genuine eOne Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon and PayPal, among others. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. eOne has not licensed or authorized Defendants to use its PJ Masks Trademarks and Copyrights, and none of the Defendants are authorized retailers of genuine eOne Products.

15. Upon information and belief, Defendants also deceive unknowing consumers by using the eOne IP without authorization within the content, text, and/or meta tags of their websites, in order to attract and manipulate search engines into identifying Defendants' Online Stores as legitimate websites for eOne Products. Defendants also employ other unauthorized search engine

4

optimization ("SEO") tactics and social media spamming so that Defendant Internet Stores show up at or near the top of relevant search results, including tactics to propel new domain names to the top of search results after others are shut down. These tactics are meant to, and are successful in, misdirecting consumers who are searching for genuine eOne Products.

16. Defendants often go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant Domain Names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

17. There are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit eOne Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit eOne Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user- defined variables, domain redirection, lack of contact information, identically or similarly priced similar hosting services,

similar name servers, and the use of the same text and images.

18.	Defendants in this case, and defendants in other similar cases against online counterfeiters, use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

19.	Counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as Amazon, Alipay, WISH, and/or PayPal accounts behind layers of payment gateways so that they can continue operation in spite of eOne's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal, or similar accounts, to off-shore bank accounts outside the jurisdiction of this Court.

20.	Plaintiff does not yet know the full extent and identity of the channels through which Defendants source and sell the Counterfeit Products. Defendants directed, supervised, and/or controlled activity infringing on Plaintiff's IP and the sale of Counterfeit Products. Defendants have a direct financial interest in the infringing activity and realize profits from the sale of Counterfeit Products. In addition to directly organizing and effectuating such infringing activities, each Defendant also induced, caused, and materially contributed to infringing conduct by others, including the other Defendants. There is a causal relationship between the infringing activity and the financial benefit reaped by Defendants.

21. Monetary damages alone cannot adequately compensate Entertainment One UK Ltd. for ongoing infringement because monetary damages fail to address the loss of control of and damage to eOne's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to eOne's reputation and goodwill by acts of infringement.

22. eOne's goodwill and reputation are irreparably damaged when the PJ Masks Trademarks and Copyrights are used on goods not authorized, produced, or manufactured by eOne. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to eOne's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

23. eOne is further irreparably harmed by the unauthorized use of the PJ Masks Trademarks and Copyrights because counterfeiters take away eOne's ability to control the nature and quality of products bearing the PJ Masks Trademarks and Copyrights. Loss of quality control over goods bearing the PJ Masks Trademarks and Copyrights and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

24. The sale of Counterfeit eOne Products bearing the PJ Masks Trademarks and Copyrights also causes consumer confusion, which weakens eOne brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit eOne Products they have purchased originated from eOne will come to believe that eOne offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine eOne Products, resulting in a loss or undermining of eOne's reputation and goodwill.

25. eOne is further irreparably damaged due to a loss in exclusivity. The eOne

7

Products are meant to be exclusive. eOne's marketing and distribution of eOne Products are aimed at growing and sustaining sales of eOne Products. The eOne Trademarks and Copyrights are distinctive and signify to consumers that the products originate from eOne, and are manufactured to eOne's quality standards. When counterfeiters use the PJ Masks Trademarks and Copyrights on goods without eOne's authorization, the exclusivity of eOne Products, as well as eOne's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

26. eOne will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 25, 2021.

*/s/ Paul Varley*
Paul Varley