UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XYZ CORPORATION,<br><br>    PLAINTIFF,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>    DEFENDANTS. | CASE NO.: 1:21-CV-00386<br><br>JUDGE VIRGINIA M. KENDALL<br><br>MAGISTRATE JUDGE JEFFREY COLE<br><br>FILED UNDER SEAL |

## DECLARATION OF ANN MARIE SULLIVAN

I, Ann Marie Sullivan, of the City of Chicago, in the State of Illinois, declare and state as follows:

1. I am an attorney at law, duly admitted to practice before the Courts of the State of Illinois and the United States District Court for the Northern District of Illinois. I am one of the attorneys for Plaintiff, XYZ Corporation ("Plaintiff"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2. According to The Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report, e-commerce sales have resulted in a sharp increase in the shipment of unauthorized products into the United States. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. True and correct copy of an excerpt of this report, attached hereto as **Exhibit 1**.

1

3. According to a January 2011 Mark Monitor report entitled "Traffic Report: Online Piracy and Counterfeiting," the combined traffic to 48 sites selling counterfeit goods was more than 240,000 visits per day on average or more than 87 million visits per year. A true and correct copy of this report is attached hereto as **Exhibit 2**.

4. According to a 2016 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the International Trademark Association (INTA) entitled "The Economic Impacts of Counterfeiting and Piracy" included findings that estimate the value of international and domestic trade in counterfeit and pirated goods in 2013 was between $710 -$ 917 Billion – with this figure expected to increase each year – and account for wider economic costs associated with the effects of counterfeiting and piracy on the displacement of legitimate economic activity, including lost tax revenue. A true and correct copy of an excerpt of this report is attached hereto as **Exhibit 3**.

5. I understand counterfeiters use a variety of tactics to evade enforcement efforts. Specifically, counterfeiters like Defendants in the present case will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit.

6. Once notice of a lawsuit is received, counterfeiters frequently move website hosting to rogue servers located outside the United States and/or begin redirecting traffic to a different, newly created domain name not named in the corresponding lawsuit. Rogue servers are notorious for ignoring take down demands sent by brand owners.

7. I also understand that once notice of a lawsuit is received, counterfeiters such as Defendants move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.

8. For these reasons, in the absence of an *ex parte* Order, Defendants could and likely would modify registration data and content, change hosts, redirect traffic to other websites in their

control, and move any assets from accounts in U.S.-based financial institutions, including PayPal accounts, to offshore accounts.

9. Analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

10. I have reviewed The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, to which China is a signatory. The Hague Convention does not preclude service by email, and the declarations to The Hague Convention filed by China do not appear to expressly prohibit email service.

11. Additionally, according to Article 1 of The Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." A true and correct copy of The Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters, and a list of signatory members, are collectively attached hereto as **Exhibit 4**.

12. For these reasons, in the absence of an *ex parte* Order, Defendants could and likely would move any assets from accounts in financial institutions subject to this Court's jurisdiction to offshore accounts.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 25, 2021, at Chicago, Illinois.

/s/ *Ann Marie Sullivan*
Ann Marie Sullivan

**COUNSEL FOR PLAINTIFF**